# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RICHARD A. TENNIS, RHODA L. TENNIS, )
TENNIS, INC., AND TENNIS ROOFING & )
ASPHALT, INC., )
          Plaintiffs, )
           )
          v. )     CIVIL ACTION NO. 2:10-cv-00563
           )
FORD MOTOR COMPANY, )     JUDGE MCVERRY
          Defendant. )

## MEMORANDUM OPINION AND ORDER

Presently pending before the Court for disposition is DEFENDANT FORD MOTOR
COMPANY'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) AND
MOTION TO STRIKE PURSUANT TO FED. R. CIV. P. 12(F) (Document No. 4) with brief in
support, filed by Defendant, Ford Motor Company. Plaintiffs filed a brief in response to
Defendant's Motion to Dismiss and Motion to Strike (Document No. 7) and the motions are ripe
for disposition.

## Factual Background

This case arises from a fire that ignited unexpectedly and spontaneously from a 1997
Ford Expedition while it was parked inside of a warehouse on or about December 23, 2007.
(Compl. at ¶ 10).[1] As a result of the fire, Plaintiffs[2] allege that they suffered "loss of income,
interruption of their business, loss [sic] of improvements to the warehouse, business relocation
expenses, loss of use of their money, loss of use of their property, damage to their property, loss
of contents in the building, and incurred interest expenses to finance the repairs." (Compl. at ¶
15). Plaintiffs claim that the smoke and heat from the fire damaged their real and personal
property. (Compl. at ¶ 26).

---

[1] The Court notes that some of the paragraphs in the Complaint are numbered out of sequence,
and/or are repetitious.
[2] The Complaint does not specify the damages suffered by the various Plaintiffs.

Plaintiffs, Richard A. Tennis and Ronda L. Tennis, husband and wife, reside in Washington County, Pennsylvania. (Compl. at ¶ 1). Plaintiff Tennis Inc., a Pennsylvania corporation, is owned by Richard Tennis. (Compl. at ¶ 2). Plaintiff Tennis Roofing & Asphalt, Inc. is also a Pennsylvania corporation owned and operated by Richard Tennis in Washington County, Pennsylvania. (Compl. at ¶ 3). Tennis, Inc. owned the 1997 Ford Expedition with vehicle Identification Number 1FMEU18W6VLA14811 ("1997 Ford Expedition"). (Compl. at ¶ 8). Defendant Ford Motor Company ("Ford") is a corporation that exists under the laws of the State of Michigan, with its principal place of business located at 1 American Road, Dearborn, Michigan 48126. (Compl. at ¶ 4).

The warehouse that was destroyed in the fire was located at 821 Morganza Road, Allegheny County, Canonsburg, PA 15317, where Plaintiffs operated a roofing and asphalt business. (Compl. at ¶ 10-11). Plaintiffs had entered into an option to purchase the warehouse building, and had done substantial repairs and additions to the building in an amount in excess of $120,000, including a new addition, a new roof, and a new driveway. (Compl. at ¶ 12).

The Complaint alleges that the fire occurred due to a defect in the 1997 Ford Expedition's Speed Control Deactivation Switch ("SCDS"). (Compl. at ¶ 16). The fire allegedly originated at the SCDS due to an electrical short or failure of the SCDS and/or its associated circuitry. (Compl. at ¶ 19). The heat generated by the electrical short or failure of the SCDS was sufficient to ignite the surrounding combustibles within the vehicle's engine compartment. (Compl. at ¶ 20).

The SCDS is a hydraulic pressure switch that functions as a redundant safety switch to stop power during brake applications. (Compl. at ¶ 27). The switch is normally closed, but contracts open at brake system pressures produced by approximately 5 to 10 pounds of force on the brake pedal. (Compl. at ¶ 28). The SCDS may be oriented so that it mounts in a vertically up, vertically down, or angled down position. (Compl. at ¶ 31). In the 1997 Ford Expedition,

the SCDS was mounted in a vertically up position. (Compl. at ¶ 31). The three primary factors that contribute to the defect and failure of the SCDS are 1) vacuum pressure (duration and magnitude); 2) SCDS orientation; and 3) the presence of power at all times. (Compl. at ¶ 56). The Complaint alleges that Ford has known since 1999 that mounting the SCDS in a vertically down position greatly decreases the chances of the SCDS catching fire. (Compl. at ¶ 75).

The Complaint asserts that the switch on the 1997 Ford Expedition received uninterrupted voltage and electrical current from the battery so that it was "Powered at All Times" ("PAT"). (Compl. at ¶ 34). The switch contracts to conduct up to 0.75 amps to the speed control clutch when the speed control is engaged, and 0.005 amps when not engaged. (Compl. at ¶ 35). Depending on the model, Ford installed either a 15 or 20 amp fuse on the speed control circuit. (Compl. at ¶ 36). According to the Complaint, this is significantly more than the current needed for the normal operation of the SCDS microprocessors, and is oversized for this system. (Compl. at ¶ 36).

Even when the automobile is turned off, the SCDS has electricity running through it. (Compl. at ¶ 77). Allegedly, the SCDS circuitry does not contain a circuit breaker or fuse that will isolate, protect, or interrupt the power to the switch when the current exceeds a level essential to produce enough electrical power to overheat. (Compl. at ¶ 78). With vehicles that are powered all the time, the continuous power provides the source to produce sufficient energy to start heating the components of the switch. (Compl. at ¶ 80). According to the Complaint, it was economically, technologically, and physically feasible for Ford to make the SCDS "non PAT" prior to the design, manufacture, and marketing of the 1997 Ford Expedition. (Compl. at ¶ 81).

Plaintiffs contend that Ford knew in 2003 that it was using a "defective electrical component part" (SCDS) which it received from Texas Instruments, and it delayed in having issued a recall of its vehicles, including Plaintiff's 1997 Ford Expedition. (Compl. at ¶ 85).

Plaintiffs allege that Ford knew, or should have known, that the defective SCDS and component switch would cause substantial numbers of property damage, injuries, and deaths due to its combustible design, and lack of appropriate and adequate fire avoidance elements. (Compl. at ¶ 86).

According to the Complaint, Ford claims to have allegedly sent out numerous recall notices to its customers, but many customers did not receive any communique alerting them of this recall, or they received letters that were inadequate to constitute a warning of the known dangers. (Compl. at ¶ 97). In cases in which Ford customers did receive recall letter(s), the vehicles were either improperly repaired or could not be properly repaired because Ford lacked a sufficient supply of repair and/or replacement parts. (Compl. at ¶ 98). Plaintiffs claim that in March of 2008they did receive a recall notice for their 1997 Ford Expedition -- after it had already caught fire. (Compl. at ¶ 99).

The Complaint alleges the following causes of action: (I) Strict Liability, (II) Negligence, (III) Breach of Implied Warranty of Merchantability, (IV) Fraud, (V) Negligent Misrepresentation, (VI) Fraud by Non-Disclosure, (VII) Breach of Contract, (VIII) Res Ipsa Loquitur, and (IX) Punitive Damages.

In response, Defendant avers that Plaintiffs' claims of fraud (Count IV), negligent misrepresentation (Count V), and fraud by non-disclosure (Count VI) must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) under Pennsylvania's "gist of the action" doctrine. Additionally, Defendant argues that Plaintiffs' claims of strict liability (Count I), negligence (Count II), and negligent misrepresentation (Count V) must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) based on the economic loss doctrine. Further, Defendant asserts that Plaintiffs' counts of res ipsa loquitur (Count VIII) and punitive damages (Count IX) must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Defendant does not challenge Count III (Breach of Implied Warranty of Merchantability) or

Count VII (Breach of Contract). Defendant moves to strike paragraphs seventeen to ninety-eight (17-98) of Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(f), alleging that these paragraphs contain scandalous and impertinent information.

**Procedural History**

Plaintiffs filed their Complaint in Civil Action in the Court of Common Pleas of Allegheny County, Pennsylvania on April 8, 2010. Defendant filed a timely notice of removal on May 4, 2010 to this Court based on diversity jurisdiction. On May 11, 2010 Defendant filed a Motion to Dismiss seven of the nine counts of the Complaint, a Motion to Strike paragraphs 17-98 of the Complaint, and a supporting brief.

**Legal Analysis**

As a preliminary matter, jurisdiction in this case is based on the diversity of the parties. 28 U.S.C. § 1332(a). Pursuant to 28 U.S.C. § 1332(a), district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest, and is between . . . citizens of different States." *Id*. Complete diversity requires that, in cases with multiple plaintiffs or multiple defendants, no plaintiff be a citizen of the same state as any defendant. *See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010).

Further, a federal court sitting in diversity must apply substantive law of the state in which it sits, *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), including its choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941). All parties have assumed that Pennsylvania law applies to this case, as will the Court.

Defendant has raised numerous legal challenges to the Complaint. The Court will first address Defendant's Motion to Strike paragraphs 17-98 of the Complaint based on Fed. R. Civ. P. 12(f). The Court will then address Defendant's Motion to Dismiss for failure to state a valid claim pursuant to Fed. R. Civ. P. 12(b)(6).

A.    **Motion to Strike Pursuant to Fed. R. Civ. P. 12(f)**

Defendant moves to strike 82 of the first 98 paragraphs in the Complaint pursuant to Fed. R. Civ. P. 12(f) on the basis that these paragraphs are devoid of any relevant information, and are either impertinent or scandalous. Defendant contends that Plaintiffs have pled impertinent evidentiary information regarding different makes and models of Ford vehicles rather than Plaintiff's 1997 Ford Expedition in paragraphs 17-20, 39, 55, 82, 84, 87-90, and 92-98. Defendant also argues that Plaintiffs have improperly pled evidence in many paragraphs that is akin to an introductory statement. Defendant asserts that only the first 16 paragraphs aver facts directly related to Plaintiff's 1997 Ford Expedition, and Plaintiffs' counts averring causes of action do not begin until paragraph 99, such that all of the intervening averments should be striken.

In response, Plaintiffs contend that they are not precluded by Rule 12(f) from averring specific facts contained in paragraphs 17-98 of the Complaint because the averments are relevant, material, pertinent, and truthful. Plaintiffs argue that the material in the Complaint relates to the controversy, serves to educate the court, and demonstrates that Defendant had knowledge of the defect through illustrations of other scenarios of the same occurrence. According to Plaintiffs, all averments in the Complaint are related to the issues at hand and are essential and important to support each claim for relief. Although the averments cast Defendant in a negative light, Plaintiffs assert that they are true statements and are not derogatory to Defendant.

Under Fed. R. Civ. P. 12(f) "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Rule 12(f) "permits the court, on its own motion, or on the timely motion of a party, to 'order striken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.' *Adams v. Cnty. of Erie, Pa.*, 2009 WL 4016636 at *1 (W.D. Pa. Nov. 19, 2009)

(*quoting* Fed. R. Civ. P. 12(f)). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Natale v. Winthrop Resources Corp.*, 2008 WL 2758238 at *14 (E.D. Pa. July 9, 2008) (*quoting McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002)).

Although courts possess "'considerable discretion in disposing of a motion to strike under Rule 12(f),' such motions are 'not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case.'" *Thorton v. UL Enterprises, LLC*, 2010 WL 1005021 at *2 (W.D. Pa. March 16, 2010) (internal citations omitted). "Striking some or all of a pleading is therefore considered a 'drastic remedy to be resorted to only when required for the purposes of justice.'" *Thorton*, 2010 WL 1005021 at *2 (*quoting Dela Cruz v. Piccari Press*, 521 F. Supp. 2d 424, 428 (E.D. Pa. 2007) (quotations omitted)).

The Court finds and rules that paragraphs 17-98 of the Complaint do not contain redundant, immaterial, impertinent, or scandalous information. Although the Court recognizes Defendant's concerns, the Court concludes that paragraphs 17-98 are related to this action and are not unduly prejudicial or scandalous to Ford.

Accordingly, the Court will DENY Defendant's request to strike paragraphs 17-98 of the Complaint.

**B.     Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)**

The Court will now address Defendant's Motion to Dismiss claims in the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

**Standard of Review**

Federal Rule of Civil Procedure 12(b) provides that "the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted." A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) challenges the legal

sufficiency of a complaint filed by the plaintiff. The United States Supreme Court has held that "[a] plaintiff's obligation is to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986) (alterations in original)).

The Court must accept as true all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. However, as the Supreme Court made clear in *Twombly*, the "factual allegations must be enough to raise a right to relief above the speculative level." *Id*. The Supreme Court has subsequently broadened the scope of this requirement, stating that "only a complaint that states a ***plausible*** claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1950 (2009) (*citing Twombly*, 550 U.S. at 556) (emphasis added).

Thus, after *Iqbal*, a district court must conduct a two-part analysis when presented with a motion to dismiss for failure to state a claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the Court must separate the factual and legal elements of the claim. *Id*. Although the Court "must accept all of the complaint's well-pleaded facts as true, [it] may disregard any legal conclusions." *Id*. at 210-211. Second, the Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Id*. at 211 (*citing Iqbal*, 129 S. Ct. at 1950).

As a result, "pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than a possibility of relief to survive a motion to dismiss." *Fowler*, 578 F.3d at 210. That is, "all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible. This then

'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. at 210 (*quoting Iqbal*, 129 S. Ct. at 1948).

However, nothing in *Twombly* or *Iqbal* changed the other pleading standards for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and the requirements of Fed. R. Civ. P. 8 must still be met. *See Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citations omitted). Fed. R. Civ. P. 8 requires a showing, rather than a blanket assertion, of entitlement to relief, and "contemplates the statement of circumstances, occurrences, and events in support of the claim presented and does not authorize a pleader's bare averment that he wants relief and is entitled to it." *Twombly*, 550 U.S. at 555 n.3 (internal citations and quotations omitted). Additionally, the Supreme Court did not abolish the Fed. R. Civ. P. 12(b)(6) requirement that "the facts must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips*, 515 F.3d at 231 (*citing Twombly*, 550 U.S. at 553).

## 1. "Gist of the Action" Doctrine (Counts IV, V, and VI)

In Count IV of the Complaint (Fraud), Plaintiffs assert that Defendant Ford intentionally made material misrepresentations, including that the 1997 Ford Expedition was safe, while Ford knew it was subject to sudden ignition and catastrophic fires. (Compl. at ¶ 118). Plaintiffs allege that Ford intentionally concealed from and/or failed to disclose to Plaintiffs and others involved in the distribution process of the automobiles that the SCDS switches that Ford installed were defective. (Compl. at ¶ 118). Plaintiffs assert that Ford fraudulently and actively concealed the defective nature of the automobiles and the SCDS and Kapton products from Plaintiffs and other Ford customers. (Compl. at ¶ 120). Plaintiffs also contend that Defendant either knew the representations were false, or made such representations recklessly without knowledge of the assertions. (Compl. at ¶ 121).

In addition, Plaintiffs assert in Count V (Negligent Misrepresentation) that Defendant

made misrepresentations in the course of its business that the 1997 Ford Expedition was safe while Ford knew that it was defective. (Compl. at ¶ 123). Plaintiffs also contend that Ford concealed from and/or failed to disclose to Plaintiffs and others involved in the distribution of the automobiles that the defective SCDS/Kapton switches were dangerous. (Compl. at ¶ 123). According to Plaintiffs, Ford supplied false information for the guidance of others in the business, and failed to exercise reasonable care in obtaining or communicating to Plaintiffs that the automobile was dangerous. (Compl. at ¶ 123).

Further, Plaintiffs assert in Count VI (Fraud by Non-Disclosure) that Ford concealed or failed to disclose that the 1997 Ford Expedition was defective, and Ford thus intended to induce Plaintiffs to purchase the subject automobile. (Compl. at ¶ 125). Counts, IV, V, and VI are referred to collectively by both Plaintiffs and Defendant as "the fraud claims."

Defendant Ford contends that Plaintiffs' claims of fraud (Count IV), negligent misrepresentation (Count V), and fraud by non-disclosure (Count VI) must be dismissed under Fed. R. Civ. P. 12(b)(6) based on the "gist of the action doctrine."[3] According to Defendant, Plaintiff's fraud claims arise from a contract, and therefore Plaintiffs are precluded from re-casting them as tort claims. Defendant asserts that the gist of Plaintiff's fraud claims is that Ford breached express and implied warranties during the sale of the 1997 Ford Expedition to Plaintiffs. According to Defendant, because Plaintiff's fraud claims are intertwined with the breach of contract claim, they are barred by the "gist of the action doctrine."

---

[3] Although the Pennsylvania Supreme Court has not expressly reviewed the concept of the "gist of the action" doctrine, it has recognized the problems inherent in allowing a party to proceed with both tort and contract claims for harm that arose in connection with a contractual relationship. *See Glazer v. Chandler*, 200 A.2d 416, 418 (Pa. 1964); *see also Pediatrix Screening, Inc. v. Telechem Intern. Inc.*, F.3d, 2010 U.S. App. LEXIS 8137, 2010 WL 1542385 (3d Cir. Apr. 20, 2010). The Pennsylvania Superior Court has "operated under the assumption that the gist of the action doctrine is a viable doctrine that will eventually be explicitly adopted by [the] state's High Court." *Reardon v. Allegheny Coll.*, 926 A.2d 477, 486 (Pa. Super. Ct. 2007) (citations omitted). The Court of Appeals for the Third Circuit likewise has adopted that view. *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 103-104 (3d Cir. 2001).

Plaintiffs respond by asserting that their claims of fraud, negligent misrepresentation, and fraud by non-disclosure arose prior to the formation of their contract with Ford, rather than from Ford's failure to perform a contractual term. According to Plaintiffs, Defendant made false and misleading claims to Plaintiffs through representations that were separate and prior to any written or oral contractual agreement. Plaintiffs assert that although Defendant was aware of the unsafe defect causing fires in its vehicles, it failed to disclose those defects to Plaintiffs prior to their purchase of the 1997 Ford Expedition and the formation of a contact. In sum, Plaintiffs argue that the "gist of the action" doctrine does not bar fraud claims stemming from the fraudulent inducement to enter into a contract.

Pennsylvania's "gist of the action" doctrine is "designed to maintain the conceptual distinction between breach of contract claims and tort claims." *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002) (*citing Bash v. Bell Tel. Co. of Pa.*, 601 A.2d 825, 829 (Pa. Super. Ct. 1992). Tort claims cannot be maintained when they essentially duplicate an action for breach of an underlying contract. *Sunquest Info. Sys., Inc. v. Dean Witter Reynolds*, 40 F. Supp. 2d 644, 651 (W.D. Pa. 1999). A tort claim is barred by the gist of the action doctrine if: (1) it arises solely from a contract between the parties; (2) the duties allegedly breached were created and grounded in the contract itself; (3) the liability stems from a contract; or (4) the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract. *Williams v. Hilton Grp., PLC*, 261 F. Supp. 2d 324, 328 (W.D. Pa. 2003) (*citing eToll*, 811 A.2d at 19)).

The doctrine is based on the notion that the "important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus." *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 103-104 (3d Cir. 2001) (*quoting Redevelopment Auth. of Cambria Cnty. v. Int'l Ins. Co.*, 685 A.2d 581, 590 (Pa. Super. Ct. 1996)) *cert. denied,*

*Ellwood City Forge Co. v. Bohler-Uddeholm Am., Inc.*, 534 U.S. 1162 (2002). Thus, a litigant is limited to a contract claim "when the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts." *Hart v. Arnold*, 884 A.2d 316, 339-340 (Pa. Super. Ct. 2005). If, on the other hand, the contract is merely collateral to the wrong described, the existence of a contract does not prevent recovery in tort. *eToll*, 811 A.2d at 14.

Many courts have struggled with whether the "gist of the action" doctrine applies to fraud cases. *See eToll*, 811 A.2d 10. "[T]he mandate of this doctrine as it has evolved in Pennsylvania is simply that courts must examine the relationship between simultaneously pleaded fraud and contract claims." *Guy Chem. Co., Inc. v. Romaco N.V.*, 2007 WL 184782 at *6 (W.D. Pa. Jan. 22, 2007). In determining whether the doctrine is applicable, a court must establish whether the source of the duties breached were "intertwined" with obligations under the contract, or if they were merely collateral. *Sunquest Info. Sys., Inc.*, 40 F. Supp. 2d at 651. While it is true that the "gist of the action" doctrine will not bar all "fraud in the inducement" claims, "[t]he particular theory of fraud-whether it lies in inducement or performance- is not dispositive." *Guy Chem. Co., Inc.*, 2007 WL 184782 at *6. *See also Owen J. Roberts Sch. Dist. v. HTE, Inc.*, 2003 WL 735098 (E.D. Pa. Feb. 28, 2003) (applying the "gist of the action" doctrine to a "fraud in the inducement" claim where the pre-contractual statements regarding ability to supply software in a timely manner were ultimately addressed in the contract); *Galdieri v. Monsanto Co.*, 245 F. Supp. 2d 636, 650 (E.D. Pa. 2002) (dismissing the plaintiff's fraudulent inducement claim under "gist of the action" doctrine where the alleged fraud was that the defendant never intended to perform). There is "no indication that Pennsylvania law has diverged" from the conclusion that the "gist of the action" doctrine "may in certain circumstances bar fraudulent-inducement claims." *Guy Chem. Co.,* 2007 WL 184782 at *6 (*citing Sunquest Info Sys.*, 40 F. Supp. 2d at 656).

Here, Plaintiffs rely on three cases in support of their argument that "fraud in the inducement" claims are not barred by the "gist of the action" doctrine. First, Plaintiffs cite *Mirizio v. Joseph*, 2010 WL 1645965 at *11 (Pa. Super. Ct. April 26, 2010) to emphasize the conclusion of the Pennsylvania Superior Court in 2010 that actions prior to the formation of a contract constituted "fraud in the inducement," and therefore, the "gist of the action" doctrine did not bar a plaintiff's fraud claims. However, the Pennsylvania Superior Court stated that the "gist of the action" doctrine was inapplicable in that case because the facts demonstrated that the appellee "never intended to perform the duties he agreed to" in order to induce the appellant. *Id.* at *11. Therefore, the gist of the appellant's fraud claim was that the appellee fraudulently induced her to enter into an agreement, and the performance of the appellee's duties under the agreement "was collateral to [the] fraudulent scheme." *Id.*

Second, Plaintiffs cite *Air Products and Chems., Inc. v. Eaton Metal Prods. Co.*, 256 F. Supp. 2d 329, 344 (E.D. Pa. 2003), in which the Eastern District of Pennsylvania held that the "gist of the action" doctrine did not bar a plaintiff's claims of fraudulent inducement. Although the doctrine did not apply in that case, it was not the defendant's alleged failure to perform under the contract that was fraudulent, but rather that its "alleged misrepresentations" with regard to its "objective qualifications to adequately perform" that were deceptive. *Id.* at 342.

Third, Plaintiffs cite *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710 (Pa. Super. Ct. 2005), to emphasize the Pennsylvania Superior Court's conclusion that when "tort claims relate to the inducement to contract, they are collateral to the performance of the contract and therefore, are not barred by the gist-of-the action doctrine." *Id.* at 719. In that case, the appellant raised tort claims that were related to the appellee's fraudulent promises, which were intended to induce appellant to enter into a contract. *Id.* Appellant specifically alleged that the appellee fraudulently and/or negligently agreed to perform obligations that the appellee never intended to perform. *Id.*

In this case, by contrast, the parties entered into a contract and Ford performed by providing the 1997 Ford Expedition to Plaintiffs. Indeed, the car apparently was still in use at the time of the fire ten years later. Among the allegations of fraud, negligent misrepresentation, and fraud by non-disclosure in Counts V, VI, and VII, Plaintiffs assert in the Complaint that Defendant Ford made numerous material misrepresentations to induce Plaintiffs to purchase the 1997 Ford Expedition. (Compl. at ¶ 118, 123, 125). Plaintiffs additionally argue that Ford either knew its representations were false, or made these representations recklessly without any knowledge of the truth. (Compl. at ¶ 120, 121). The Court finds that Plaintiffs' allegations of fraud are "intertwined" with the alleged failure of Ford to perform under the terms of the contract by providing a vehicle that was suitable for its intended use. Plaintiff's fraud claims are barred because Ford's alleged failure to perform its contractual duties under the contract cannot be transformed into a claim for fraud. *See Caudill Seed & Warehouse Co., Inc. v. Prophet 21 Inc.*, 123 F. Supp. 2d 826, 833-834 (E.D. Pa. 2000) (the plaintiff's allegation that the defendant's claim that software would work, which was breached when it did not work, was a mere restatement of the breach of contract claim, and not fraud).

The Court acknowledges that it must exercise caution in making a determination regarding the "gist of the action" doctrine at this early stage of the case. *See Weber Display & Packaging v. Providence Wash. Ins. Co.*, 2003 WL 329141 (E.D. Pa. Feb. 10, 2003). However, the Court rules that Plaintiffs' claims of fraud, negligent misrepresentation, and fraud by non-disclosure are based solely on duties imposed by the parties' contract. Plaintiff's contract with Ford is not merely collateral, but rather is at the heart of the fraud claims. In other words, the tort claims essentially duplicate the breach of contract claims.

Accordingly, the Court will GRANT Defendant's Motion to Dismiss Plaintiffs' claims of fraud, negligent misrepresentation, and fraud by non-disclosure (Counts V, VI, and VII) as being barred by the "gist of the action" doctrine.

## 2. Economic Loss Doctrine (Counts I, II, and V)

Defendant asserts that Plaintiffs' claims of negligence (Count I), strict liability (Count II), and negligent misrepresentation (Count V) must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) under the economic loss doctrine. Defendant relies on *Jones v. General Motors Corp.*, 631 A.3d 665, 666 (Pa. Super. Ct. 1993), in which the Pennsylvania Superior Court held that absent allegations of damage outside loss of an automobile, there is no cause of action in strict liability. In *Jones*, buyers of a Chevrolet pick-up truck brought suit against the manufacturer, General Motors Corporation, seeking damages for losses sustained when a malfunction in the truck caused it to catch fire. *Id*. at 665. Just prior to the fire, one appellant had driven the truck from his home to a parking lot. *Id*. While the appellant was inside of a store, the truck caught fire and was destroyed. *Id*. Because the appellants made no allegations of damage but for the loss of the truck itself, the court held that they failed to state a cause of action in strict liability. *Id*. at 666.

Here, Defendant contends that Plaintiffs cannot recover for damage to real and personal property because Plaintiffs did not own the warehouse that was destroyed in the fire. Defendant's sole argument is that Plaintiffs have no claim for damage to real property absent ownership of the property destroyed. Defendant asserts therefore that Plaintiff's strict liability, negligence, and negligent misrepresentation claims are barred by the economic loss doctrine.[4]

In response, Plaintiffs assert that under Pennsylvania law, their claims of strict liability, negligence, and negligent misrepresentation are not barred by the economic loss doctrine because they allege both economic and property damages in the Complaint. Plaintiffs concede that they did not own the warehouse, but point out that they suffered damage to the contents in

---

[4] The Court notes that Defendant moved to dismiss Count V (Negligent Misrepresentation) based on both the gist of the action doctrine and the economic loss doctrine. The Court granted Defendant's Motion to Dismiss the negligent misrepresentation claim under the "gist of the action" doctrine and need not address it under the economic loss doctrine.

the warehouse.[5] Plaintiffs allege that they suffered numerous other damages in addition to the loss of their 1997 Ford Expedition, and, therefore they are not prohibited from recovering in tort under the economic loss doctrine.

Under Pennsylvania law, the economic loss doctrine provides that "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage." *Excavation Technologies Inc. v. Columbia Gas Co. of Pa.*, 985 A.2d 840, 841 (Pa. 2009) (*quoting Adams v. Cooper Beach Townhome Communities, L.P.*, 816 A.2d 301, 305 (Pa. Super. Ct. 2003)). It prohibits "plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Bohler-Uddeholm Am., Inc.*, 247 F.3d at 104 (*quoting Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995)). The doctrine precludes a tort plaintiff from recovering for purely economic losses. *Bilt-Rite Contractors Inc. v. Architectural Studio*, 866 A.2d 270, 273 (Pa. 2005).

In *REM Coal Co. Inc. v. Clark Equipment*, 563 A.2d 128 (Pa. Super. Ct. 1989), the Pennsylvania Superior Court adopted the standard expressed by the United States Supreme Court in *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 106 S. Ct. 2295 (1986), and held that "negligence and strict liability theories do not apply in an action between commercial enterprises involving a product that malfunctions where the only resulting damage is to the product itself." *Id*. at 412-413, 134. This rule was further expanded by the Pennsylvania Superior Court in *Jones v. General Motors Corp.*, to apply the doctrine not only to commercial enterprises, but also to consumers. 631 A.3d at 666. In 2009, the Pennsylvania Supreme Court upheld the economic loss doctrine in *Excavation Technologies Inc. v. Columbia Gas Co. of Pa.*, 985 A.2d 840, 841 (Pa. 2009). Therefore, in cases where a product fails to conform and only economic losses result to the product itself and does not cause physical injury or property

---

[5] It is unclear whether Plaintiffs are also seeking damages for improvements that they made to the warehouse in anticipation of sale. However, at this juncture, the Court need not decide this issue.

damage, "the parties' recovery one against the other for economic losses should be limited to an action on that contract and no additional recovery in negligence or strict liability is permitted." *N.Y. State Electric & Gas Corp. v. Westinghouse Electric Corp.*, 564 A.2d 919, 926 (Pa. Super. Ct. 1989).

In this case, Plaintiffs did not own the warehouse, but rather entered into a lease with an option to buy it. Although Plaintiffs acknowledge that they cannot recover for loss of the warehouse, they assert that on account of the fire they lost their "contents in the building." (Compl. at ¶ 15). The economic loss doctrine does not bar a plaintiff from recovering economic damages for personal property that was destroyed in a fire. *See Erie Ins. Grp. v. Ford Motor Co.*, 2001 WL 1112981, 51 Pa. D. & C.4th 220, 224 (Pa. Com. Pl. 2001). The Complaint alleges that Plaintiffs suffered other damages in addition to the loss of their 1997 Ford Expedition. Thus, the Court rules that Plaintiffs' claims of strict liability and negligence are not barred by the economic loss doctrine.

Accordingly, the Court will DENY Defendant's motion to dismiss Plaintiffs' claims of strict liability (Count I) and negligence (Count II).


### 3. Res Ipsa Loquitur (Count VIII)

Defendant challenges Plaintiff's independent claim of res ipsa loquitur, and contends that Plaintiffs improperly pleaded this claim as Count VIII of the Complaint. Defendant relies on *Fassbinder v. Pa. R.R. Co.*, 322 F.2d 859, 863 (3d Cir. 1963) to support its argument that res ipsa loquitur is a rule of evidence and not a cause of action, a ground for recovery, or an issue. Plaintiffs have failed to respond to Defendant's challenge to dismiss Count VIII of the Complaint.

Res ipsa loquitur is "a short-hand expression for a rule of evidence which allows a jury to infer the existence of negligence and causation where the injury at issue is one that does not

ordinarily occur in the absence of negligence." *Sedlitsky v. Pareso*, 582 A.2d 1314, 1315 (Pa. Super. Ct. 1990) (*citing Gilbert v. Korvette, Inc.*, 327 A.2d 94, 99 (Pa. 1974)). It provides that "a plaintiff may satisfy his burden of producing evidence of a defendant's negligence by proving that he has been injured by a casualty of a sort that normally would not have occurred in the absence of the defendant's negligence." *Macnutt v. Temple Univ. Hosp., Inc.*, 2005 WL 5748563 at *27 (Pa. Super. Ct. 2005) (*citing* Prosser and Keeton on the Law of Torts §§ 39, 40 (4th ed. 1971)).

The Pennsylvania Supreme Court adopted the definition of res ipsa loquitur set forth in Section 328D of the Restatement (Second) of Torts in *Gilbert v. Korvette, Inc*., 327 A.2d 94, 100 (Pa. 1974). Section 328 D states in relevant part:

> (1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when (a) the event is of a kind which ordinarily does not occur in the absence of negligence; (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

Restatement (Second) of Torts § 328D cmt. 1 (1965)).

In addition, the Pennsylvania Supreme Court emphasized that res ipsa loquitur is "only a shorthand expression for circumstantial proof of negligence- a rule of evidence." *Jones v. Harrisburg Polyclinic Hosp.*, 437 A.2d 1134, 1137 (Pa. 1981) (*quoting Gilbert*, 327 A.2d at 99). It is "neither a rule of procedure nor one of substantive tort law." *Id.* Res ipsa loquitur is also not a theory of recovery, but rather a rule of circumstantial evidence. *Macnutt*, 2005 WL 5748563 at *11-12 (*citing Quinby v. Plumsteadville Family Practice, Inc.*, 907 A.2d 1061, 1071 (Pa. 2006); *D'Ardenne by D'Ardenne v. Strawbridge & Clothier, Inc.*, 712 A.2d 318, 320 (Pa. Super. Ct. 1998)). As a rule of evidence, the doctrine of res ipsa loquitur "is brought into play where the situation presented makes it applicable. It does not have to be pleaded in the complaint or noticed by specific designation to the adverse party at a pre-trial or or at trial, since it

is neither a cause of action not a ground for recovery, nor an 'issue.'" *Hollywood Shop, Inc. v. Pa. Gas & Water Co.*, 411 A.2d 509, 513 (Pa. Super. Ct. 1979) (*quoting Fassbinder v. Pa. R.R. Co.*, 322 F.2d 859, 863 (3d Cir. 1963)).

The Court rules that res ipsa loquitur is a rule of evidence and not a separate cause of action. Therefore, the Court will GRANT Defendant's Motion to Dismiss with prejudice Count VII of the Complaint.

### 4.    Punitive Damages (Count IX)

Defendant asserts that Plaintiffs improperly pleaded Count IX for punitive damages as a separate count. According to Defendant, punitive damages cannot stand as a separate claim in the Complaint. Thus, Defendant requests the Court to dismiss Count IX. Plaintiffs do not challenge Defendant's Motion to Dismiss the claim for punitive damages.

Punitive damages are a form of relief, and are not the basis for an independent cause of action. *Butler v. Yamaha Motor Co., Ltd.*, 1992 WL 170882 at *6 (E.D. Pa. July 9, 1992). Punitive damages are awarded "to punish outrageous conduct and may be awarded when the act is done with reckless indifference as well as bad motive." *Bacica v. Bd. of Educ. of the School Dist. of the City of Erie, Pa.*, 451 F. Supp. 882, 888-889 (W.D. Pa. 1978) (*citing Focht v. Rabada*, 268 A.2d 157, 159 (Pa. Super. Ct. 1970)).

"It is settled law that one cannot recover punitive damages independently from an underlying cause of action." *DiGregorio v. Keystone Health Plan E.*, 840 A.2d 361, 370 (Pa. Super. Ct. 2003). *See Hilbert v. Roth*, 149 A.2d 648, 652 (Pa. 1959) (punitive damages are incident to the underlying cause of action, "an element which the jury may consider in making its determination, and not the subject of the action in itself"). If no cause of action exists, "then no independent action exists for a claim of punitive damages since punitive damages is only an *element* of damages." *DiGregorio*, 840 A.2d at 370 (*citing Kirkbride v. Lisbon Contractors, Inc.*, 555 A.2d 800, 802 (Pa. 1989) (emphasis in original)).

19

Here, Plaintiffs improperly pleaded punitive damages as a separate count from their underlying causes of action. The Court concludes that punitive damages are merely an element of damages, and, therefore Plaintiffs are unable to plead punitive damages as an independent cause of action.

The Court will GRANT Defendant's motion to dismiss Count IX of the Complaint. The Court does not decide whether or not Plaintiffs may recover punitive damages under any of their remaining causes of action.

## Conclusion

In summary, for the reasons hereinabove set forth, Defendant's Motion to Dismiss claims of fraud (Count IV), negligent misrepresentation (Count V), and fraud by non-disclosure (Count VI) based on the gist of the action doctrine will be GRANTED. With regard to the counts of strict liability (Count I) and negligence (Count II), Defendant's Motion to Dismiss based on the economic loss doctrine will be DENIED. Additionally, Defendant's Motion to Dismiss claims of res ipsa loquitur (Count VIII) and punitive damages (Count IX) is GRANTED. Further, Defendant's Motion to Strike paragraphs 17-98 of the Complaint is DENIED.

An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD A. TENNIS, RHODA L. TENNIS, | ) | |
| TENNIS, INC., AND TENNIS ROOFING & | ) | |
| ASPHALT, INC., | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:10-cv-00563 |
| | ) | |
| FORD MOTOR COMPANY, | ) | JUDGE MCVERRY |
| Defendant. | ) | |

## ORDER OF COURT

**AND NOW**, this 26th day of July, 2010, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED, AND DECREED** that

DEFENDANT FORD MOTOR COMPANY'S MOTION TO DISMISS PURSUANT TO FED.

R. CIV. P. 12(B)(6) AND MOTION TO STRIKE PURSUANT TO FED. R. CIV. P. 12(F)

(Document No. 4) is **GRANTED IN PART and DENIED IN PART** as follows:

1.      The motion to dismiss is **GRANTED** as to Counts IV, V, VI, VIII, and IX of

   the Complaint, which are hereby **DISMISSED**.

2.      The motion to dismiss is **DENIED** in all other respects.

3.      The  MOTION TO STRIKE is **DENIED**.

Defendant shall file an Answer to Counts I, II, III, and VII of the Complaint on or before August

6, 2010.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc:      Lisa M. Barnett, Esquire
   Counsel for Defendant

   Clayton S. Morrow, Esquire
   Counsel for Plaintiffs